FUNK v GENERAL MOTORS CORPORATION

MASTER AND SERVANT—INDEPENDENT CONTRACTOR—INHERENTLY
DANGEROUS WORK—OWNER'S LIABILITY.

> An owner and his construction contractor are not liable to an
> employee of an independent contractor for the employee's fall
> from the construction project where the working conditions
> are not inherently dangerous and the employee's own acts
> caused the inherently-dangerous situation.

Appeal from Genesee, Elza H. Papp, J. Submitted Division 2 December 15, 1971, at Lansing. (Docket No. 8376.) Decided January 17, 1972. Leave to appeal granted, 387 Mich 764.

Complaint by Ellis Funk against General Motors Corporation and Darin & Armstrong for personal injuries received in a fall. Judgment for plaintiff. Defendants' motions for judgment notwithstanding the verdict denied. Defendants appeal. Judgment entered granting defendants' motions for judgment notwithstanding the verdict.

*Harry M. Philo,* for plaintiff.

*Plunkett, Cooney, Rutt & Peacock* (by *Jeanette A. Paskin* and *Leonard E. Nagi; Ross L. Malone, Otis M. Smith,* and *James P. Melican,* of counsel), for defendant General Motors Corporation.

---

REFERENCE FOR POINTS IN HEADNOTE
41 Am Jur 2d, Independent Contractors § 40 *et seq.*

*Gault, Davison & Bowers,* for defendant Darin & Armstrong.

Before: QUINN, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

QUINN, P. J.    Plaintiff brought this action to recover for injuries received when he fell through the roof of a construction project at the AC plant in Flint.    By a vote of ten to two, the jury returned a verdict for plaintiff against both defendants, a judgment entered and defendants appeal.

GMC (hereinafter owner) drafted the plans and specifications for the project and employed Darin & Armstrong (hereinafter contractor) as the general contractor.    Owner also employed the plumbing subcontractor, but the owner assigned this contract to the contractor.    The subcontractor was the employer of plaintiff.

Plaintiff was a journeyman plumber with no experience in industrial pipefitting or steamfitting, although licensed to do such work.    When plaintiff was laid off as a house plumber, his union sent him to work for the plumbing subcontractor at the AC project.    Plaintiff advised the superintendent of his lack of experience in industrial pipefitting and steamfitting.    Plaintiff was sent to work "up in the steel" installing pipe near the ceiling with no safety indoctrination.

When plaintiff went to work February 27, 1967, he was assigned to moving pipe which had been installed too close to the sprinkling system.    The pipe to be moved hung from J-hooks attached to an I-beam, and the method used to move the J-hooks the

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

required two feet was to hammer them along the beam.

Approximately the first half of the pipe was moved without difficulty, but the last half was under an area of the roof which had been covered with cement roof slabs. Unable to hammer the J-hooks under the slabs, plaintiff, on his own initiative, went on the roof, pried up the slabs, turned them over and was able to get at the J-hooks. At an area around an uncovered skylight or ventilator, the roof slabs could not be turned over because of the apron on the skylight. To open this area of the roof, plaintiff and his assistant pulled one roof slab out from under the apron about one foot where it rested on a diagonal expansion rod. Plaintiff and his assistant pulled a second roof slab out from under the apron 10–14 inches where it rested on a rod. The point where the latter slab rested on the rod was near the end of the slab, causing it to be sort of a teeter-totter.

The record is unclear as to what happened following the movement of this second slab. Only plaintiff and his assistant were present. Plaintiff testified that in attempting to arise from his knees, he leaned on his hammer, slipped, fell on the teeter-totter slab and he and the slab fell to the floor below. The assistant testified that the last time he saw plaintiff before the fall, the latter was standing near the edge of the teeter-totter slab. The assistant testified that he looked up when plaintiff yelled, and the assistant saw plaintiff feet first in the hole and about up to his chest. From the assistant's testimony, it might be inferred that plaintiff inadvertently stepped on the teeter-totter slab which gave away, causing the fall.

While the reason for the fall is unclear, the cause of the fall is clear. The cause was a hazardous con-

dition created by plaintiff and his assistant without the direction or knowledge of either defendant.

Much could be written on the many issues raised by this appeal. We believe extensive writing unwarranted, however, because our review of this record convinces us that the trial judge should have granted defendants' motions for judgment notwithstanding the verdict.

In order to avoid the general rule of nonliability of an owner and contractor to an employee of an independent subcontractor, plaintiff relied on the theory that the construction work being done for the owner by the contractor was inherently dangerous. If the theory is applicable to the facts of this case, then the owner and the contractor owed a nondelegable duty to plaintiff to take all reasonable precautions to ensure plaintiff's safety, *Olah* v *Katz,* 234 Mich 112 (1926).

This record contains no factual support for this theory. There is no testimony that work on the roof was inherently dangerous. On the contrary, plaintiff's expert testified that it was not. The inherent danger arose through the acts of plaintiff. By seeking to invoke the theory of inherent danger on these facts, plaintiff is attempting to raise himself by his own bootstraps.

Pursuant to the authority of GCR 1963, 820.1(7), an order may enter granting defendants' motions for judgment notwithstanding the verdict, without costs.

All concurred.